1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA TAYLOR, individually and on behalf of all others similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | |

COMES NOW Plaintiff Lisa Taylor, by and through counsel, individually and on behalf of all others similarly situated, and for her Class Action Complaint against Costco Wholesale Corporation ("Costco"), states and alleges as follows, which is based upon personal knowledge as to her own experience and based upon information and belief as to all other matters:

## INTRODUCTION

1.      Costco has made its $4.99 rotisserie chicken a viral, nationwide sensation, aggressively marketing it as a convenient, high-quality, and safe meal staple. As noted in a December 2025 Farm Forward article:

> The Costco chicken is convenient and notoriously cheap, an automatic purchase for millions of Americans every time they visit the store. It's also a key part of

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Costco's brand identity: a symbol of quality, consistency, and member value.[1]

2.      Far from just another grocery item, Costco's rotisserie chicken is a flagship product that has become widely associated with consistency, convenience, and value. Not unlike its similarly well-known hot dogs, Costco deliberately uses this product as a classic loss leader. It sells it at the artificially low price of $4.99—sacrificing profit or even selling at a financial loss—to entice members into its warehouses, knowing it will drive up traffic and create ancillary sale opportunities.

3.      Costco's aggressive marketing of its chickens as safe and wholesome meal option belies a starkly different reality: Costco's poultry operation has been persistently plagued by systematic Salmonella contamination that exposes consumers to serious health risks. United States Department of Agriculture ("USDA") inspection records reveal that Costco's dedicated chicken-processing plant has failed federal food safety standards nearly continuously since it opened.[2]

4.      Indeed, Costco's Nebraska poultry facility (Lincoln Premium Poultry)—which supplies its famous rotisserie chickens and Kirkland Signature raw chicken products—has earned the USDA's worst food safety rating, Category 3, in roughly 92% of reporting periods since 2019.[3] A Category 3 rating means the plant exceeded the USDA's allowable contamination rates, effectively "failing" Salmonella safety tests.

5.      And the problem is only getting worse: from late 2023 through mid-2025,

---

[1] *See* Farm Forward, *Inside Costco's Chicken Supply Chain: Salmonella Contamination and the True Costs of the $4.99 Rotisserie Chicken* (Dec. 2025) https://www.farmforward.com/publications/inside-costcos-chicken-supply-chain-salmonella-contamination-and-the-true-costs-of-the-4-99-rotisserie-chicken/.

[2] *See* Farm Forward, *The Truth Behind Costco's Famous $4.99 Rotisserie Chicken* (Dec. 2025) https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/.

CLASS ACTION COMPLAINT- 2

Costco's plant **failed every single monthly Salmonella test** (Category 3 rating 100% of the time),[4] reflecting chronic, uncontrolled and unresolved contamination levels. Even Consumer Reports has flagged Costco's Nebraska facility as one of the "most contaminated poultry plants" in the nation based on five years of USDA data through July 2025.[5]  These sustained failures present an elevated risk profile that would be material to consumers purchasing Costco's chicken products.

6.      Costco's conscious business decisions have directly led to this food safety crisis. Determined to keep its chicken at the perceived magic $4.99 price point, Costco in 2019 built a $450 million poultry complex in Fremont, Nebraska, operated by its affiliate Lincoln Premium Poultry ("LPP"), to vertically integrate chicken production from farm to store. By controlling every stage of production—from breeding and raising birds to slaughtering, processing, and distribution—Costco sought to cut out middlemen, reduce costs, and guarantee a steady supply of cheap chickens. This unprecedented level of vertical integration means Costco wields complete control over how its chickens are bred, fed, housed, and processed, with no third-party supplier to blame. In the words of one food safety advocate, "*Costco has 100% control. They get to decide how the birds are raised . . . what genetics are used . . . how the birds are killed . . . And right now they're choosing the worst option.*"[6]

7.      While this could be an opportunity for an extremely high level of quality

---

[3] *Id.*

[4] Sentient Food, *Costco Chicken Processing Plant Keeps Failing Tests for Salmonella* (Dec. 15, 2025) https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/.

[5] Consumer Reports, *The Most Contaminated Poultry Plants in the U.S. October 2025 Report* (Oct. 2025) https://advocacy.consumerreports.org/wp-content/uploads/2025/09/Most-Contaminated-Poultry-Plants-October-2025.pdf.

[6] Sentient Food, *Costco Chicken Processing Plant Keeps Failing Tests for Salmonella* (Dec. 15, 2025) https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/.

CLASS ACTION COMPLAINT- 3

control, the opposite has been true. Sadly, Costco's drive to minimize costs has come at the expense of basic food safety: the company's choices in genetics, husbandry, and processing have created fertile conditions for Salmonella to spread, resulting in poultry products riddled with dangerous bacteria. What began as a strategy to keep prices low has spiraled into a serious public health concern.[7] In essence, Costco has prioritized keeping its chickens at $4.99 over ensuring those chickens are safe to eat, all while holding out its poultry to consumers as top-quality and wholesome, without any meaningful disclosures of the problems that plague its poultry production plant.

8.      Costco's failure to control Salmonella in its chicken supply is not a harmless technicality—it poses a real danger to consumers and violates their trust. Salmonella is one of the leading causes of foodborne illness and death in the U.S., and contaminated chicken is the number one cause of Salmonella-related sickness nationally.[8] Federal standards reflect this risk: the USDA requires that no more than 9.8% of whole chickens test positive for Salmonella in order for a plant to be considered in compliance.[9] Yet Costco's Nebraska plant has flunked even this lenient standard nearly all of the time.

9.      At bottom, every trip to Costco's meat department comes with an unacceptably high risk of picking up bacteria-laden poultry that could send the entire family to the hospital. Reasonable consumers do not expect that the Costco chicken in their cart has a double-digit

---

[7] Farm Forward, *The Truth Behind Costco's Famous $4.99 Rotisserie Chicken* (Dec.2025) https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/.

[8] Civil Eats, *Poultry Plants Consistently Violate Salmonella Standards* (Nov. 3, 2025) https://civileats.com/2025/11/03/poultry-plants-consistently-violate-salmonella-standards-report-finds/.

[9] Farm Forward, *The Truth Behind Costco's Famous $4.99 Rotisserie Chicken* (December 2025) https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/.

CLASS ACTION COMPLAINT- 4

percentage chance of containing a dangerous pathogen—especially not when Costco has heavily implied that its tightly controlled supply chain would ensure quality and safety. By omitting any disclosure of this pervasive contamination, and by affirmatively promoting its chickens as safe, USDA-inspected, and subject to Costco's high standards, Costco has misled customers and violated consumer-protection laws.

10.     From a regulatory standpoint, companies in the poultry industry are generally not held directly accountable by government agencies for animal welfare or for Salmonella in raw meat, and Costco has taken full advantage of that lack of accountability. But consumer protection law does not turn a blind eye when a company's practices make its food hazardous and its marketing misleads customers about safety.

## PARTIES, JURISDICTION AND VENUE

11.     Plaintiff Lisa Taylor is a natural person residing in Affton, Missouri. Plaintiff is a Costco member and a regular purchaser of chicken products sold by Costco, including its $4.99 rotisserie chickens.

12.     Defendant Costco Wholesale Corporation is a Washington corporation with its principal place of business in Issaquah, Washington. Costco operates a chain of membership-based warehouse clubs throughout the United States (and internationally), selling a wide range of consumer goods including groceries. As of 2025, Costco was ranked 12th on the Fortune 500 rankings of the largest United States corporations by total revenue.  Costco operates over 600 warehouses in the U.S. and Puerto Rico, serving tens of millions of members.

13.     Costco is also one of the largest poultry retailers in the country, slaughtering and selling roughly 100 million chickens each year, of which a substantial portion are supplied by its in-house Nebraska plant. At all relevant times, Costco was acting in the regular course of its

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

trade or commerce as a merchant of food products. Costco at all relevant times owned or controlled the Nebraska poultry processing facility (Lincoln Premium Poultry) that produces Costco's chicken products at issue.[10] Costco, directly and through its agents and subsidiaries, transacts business in the State of Washington and in every state where its warehouses are located.

14.     This Court has personal jurisdiction over Costco because Costco's principal offices are in Washington, and Costco has purposefully availed itself of the laws and markets of Washington. Costco conducts substantial business in Washington (and specifically within the Western District), including maintaining its corporate headquarters and flagship stores, and making marketing, pricing, and product safety decisions in this District. The wrongful conduct alleged in this Complaint was conceived, directed, or executed from Costco's Washington headquarters, such that Costco's actions in Washington gave rise to the claims of Plaintiff and the class. Costco also consented to jurisdiction by registering to do business in Washington and by engaging in continuous and systematic activities within the state.

15.     Costco's executive offices and corporate decision-makers are located in Washington State, and Costco's actions and omissions alleged herein were orchestrated from its Washington headquarters. This includes decisions regarding how to price and market its rotisserie chicken, whether to disclose or address contamination issues, and oversight (or lack thereof) of its poultry processing subsidiary.  Thus, venue is proper in the Western District of Washington under 28 U.S.C. § 1391.

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The proposed class includes at least hundreds of thousands of members (if not

---

[10] See https://lincolnpremiumpoultry.com/ (stating Costco is "owner and customer").

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

millions) scattered across multiple states, and the amount in controversy exceeds $5,000,000 in aggregate value. Minimal diversity is satisfied because Plaintiff is a citizen of a state (Missouri) different from the home state of the Defendant (Washington).

**FACTS COMMON TO ALL COUNTS**

**I.    Costco's $4.99 Rotisserie Chicken is a Huge Part of its Brand Identity and Marketing Push**

17.    Costco's rotisserie chicken is famous for its inflation-proof $4.99 price, a figure that has not changed for decades despite rising costs. This impossibly low price has been instrumental in its massive sales—in Fiscal Year 2025 alone, Costco sold 157.4 million rotisserie chickens—and draws throngs of shoppers into its stores.[11] Indeed, customers will flock to a store and often wait in line primarily to grab the chicken, which is priced far below most competitors' offerings.

18.    A typical Costco rotisserie chicken is large (around 3 pounds), seasoned, and ready to eat, and is marketed as an easy meal that can be used for several days or feed a family affordably. Costco openly acknowledges that it loses money on each rotisserie chicken sale, but the company willingly shoulders that loss because it drives demand for their stores generally and helps justify the annual membership fees that are Costco's profit engine.[12]

19.    As one retail analyst put it, "The warehouse club loses money selling the chickens, but makes up for it in added sales and by enticing members to its stores" (i.e. it's a

---

[11] https://central.virtualshareholdermeeting.com/vsm/web?pvskey=COST2026

[12] Bizjournal, *Costco sets sales records for its hot dogs and rotisserie chickens* (Jan. 22, 2024), https://www.bizjournals.com/austin/bizwomen/news/latest-news/2024/01/costco-hot-dogs-chickens-record-sales.html.

CLASS ACTION COMPLAINT- 7

1  classic "loss leader" strategy).[13]

2  **Costco's Chicken is Held Out to Consumers as Safe and High Quality**

3      20.    Implicit in Costco's rotisserie chicken offering is a representation that the

4  product delivers not only value, but quality and safety consistent with Costco's brand

5  standards. In fact, until Costco changed its rotisserie chicken packaging towards in 2024, an

6  express quality guarantee stating that, "Every Kirkland Signature product is guaranteed to meet

7  or exceed the quality standards of the leading national brand" prominently appeared in boldface

8  type, enclosed in a black box to draw attention to it, directly on rotisserie chicken labels.

9

10 

11

12

13

14

15

16

17

18

19     21.    But the new plastic bag packaging is still branded as Kirkland Signature

20 Seasoned Rotisserie Chicken.

21

22

23

24

25

26 ------
[13] Yahoo! Finance, *USDA: Costco has a serious problem with its $4.99 chicken* (Jan. 13, 2026)
https://finance.yahoo.com/news/usda-costco-dangerous-problem-4-000000817.html.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



22.    According to Costco, "Kirkland Signature Means Quality & Value."[14]



"Kirkland Signature products are high quality, offered at prices that are generally lower than national brands . . . . We expect to continue to increase the sales penetration of our private-label items."[15] "Maintaining consistent product quality [of the Kirkland Signature brand], competitive pricing, and availability of these products is essential to developing and

---

[14] https://www.costco.com/f/-/about-kirkland-signature

[15] https://bit.ly/4tvT5Re

CLASS ACTION COMPLAINT- 9

1  maintaining member loyalty."[16]



A commitment to quality and value at
923 locations and on Costco.com

23.     The company touts its "Commitment to quality" and control over "carefully choosing products based on quality, price, brand and features,"[17] Costco acknowledges that its "shoppers are attracted principally by the quality of the merchandise and low prices"[18] and that if suppliers are "unable to timely supply us with quality merchandise . . . [or] not adhere to our quality control" then it will adversely affect company sales.




FY 2025 sales: ~$90B

- We control the quality, value for our members
- Ability to build/create a better item
- Innovative packaging, clean ingredients, full traceability
- Ensure global supply for our future
- 20% value to the national brand
[19]

24.     Through its quality and Kirkland Signature guarantees (including by not stopping the usage and sale of its chickens supplied by its Lincoln Premium Poultry plant), together with in-store signage and Costco's broader marketing and reputation, Costco conveys

---

[16] *Id.*

[17] https://www.costco.com/f/-/about; https://www.costco.com/f/-/company-information

[18] https://s201.q4cdn.com/287523651/files/doc_financials/2025/ar/COST-Annual-Report-2025.pdf

[19] Image from: https://central.virtualshareholdermeeting.com/vsm/web?pvskey=COST2026

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    to consumers that its rotisserie chicken is produced and sold in accordance with high quality

2    and safety standards.

3        25.    Today, Costco aggressively markets its rotisserie chickens as a ready-to-eat food

4    intended for immediate household consumption. The products are displayed to consumers

5    bearing USDA "Grade A" inspection marks and are presented without qualification or caution,

6    in a manner that communicates ordinary safety and suitability for family meals. Nothing in

7    Costco's display, labeling, or point-of-sale practices alerts consumers that the product carries

8    any unusual or heightened food-safety risk compared to other prepared foods sold in its

9    
10    warehouses.

11
12        
13
14
15
16
17        26.    Similarly, Costco markets its raw chicken products sold under the Kirkland

18    Signature brand as high-quality staple goods, including through the use of descriptors such as

19    "Grade A" and the placement of a USDA inspection seal on bulk packaging. Neither the

20    product labels nor Costco's advertising disclose that these chicken products were sourced from

21    a facility with persistently elevated Salmonella contamination rates.

22
23
24
25
26

CLASS ACTION COMPLAINT- 11

1
2
3
4
5
6
7
8
9

 

10
11
12
13
14
15
16
17
18

 

19      27.      While USDA maintains voluntary grading standards for certain raw poultry

20 carcasses and parts, those grades do not apply to cooked or prepared poultry products and do

21 not constitute a safety or quality certification of finished foods.[20] Prepared poultry products

22 themselves are not eligible for USDA Grade A designation,[21] making the designation

23

24 _____

25 [20] *See* USDA, *United States Classes, Standards, and Grades for Poultry* (Aug. 6, 2018),
https://www.ams.usda.gov/sites/default/files/media/PoultryStandard.pdf.

26 [21] *See* USDA, *Poultry-Grading Manual* (1998),
https://www.ams.usda.gov/sites/default/files/media/PoultryGradingManual.pdf.

CLASS ACTION COMPLAINT- 12

1    inapplicable, and thus highly deceptive when placed on Costco's rotisserie chicken.

2        28.    Through its promotion of the $4.99 rotisserie chicken as a signature offering,

3    Costco reinforces consumer confidence in the safety and quality of its poultry products. That

4    marketing posture reasonably leads consumers to assume that a core, high-volume product sold

5    under Costco's control and branding would not carry undisclosed and atypical food-safety

6    risks.

7

8    **II.    Costco Assumed Ownership of Every Aspect of the Poultry Products it Offers to the Public**

9        29.    In 2019, Costco took the dramatic step of creating its own poultry supply chain

10   from scratch. It partnered with growers and invested approximately $450 million to build a

11   state-of-the-art poultry complex in Fremont, Nebraska. This complex, operated by Costco's

12   subsidiary Lincoln Premium Poultry (LPP), includes hatcheries, feed mills, breeder barns,

13   grow-out barns run by contract farmers, and a large slaughter/processing plant.[22]  It was

14   Costco's first attempt to raise and process chickens entirely in-house.

15       30.    The Fremont plant now processes over 100 million chickens per year

16   exclusively for Costco. Those chickens go on to become Costco's rotisserie birds and Kirkland

17   Signature raw chicken parts sold in stores across the country.

18       31.    Costco's decision to vertically integrate its poultry supply chain placed

19   responsibility for quality control squarely within the company's control. By overseeing

20   production from egg to shelf, Costco positioned itself to manage costs while maintaining

21   consistent standards and implementing food-safety controls at each stage of production.

22

---

[22] https://lincolnpremiumpoultry.com/; Farm Forward, *The Truth Behind Costco's Famous $4.99 Rotisserie Chicken* (December 2025) https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/; https://www.farmforward.com/wp-content/uploads/2025/12/Farm-Forward-Contaminated-Costco-12.3.2025.pdf.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

CLASS ACTION COMPLAINT- 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.    Costco's Venture Into Poultry Processing Has Been a Disaster

32.    In reality, however, Costco's experiment in poultry integration has been a disaster from a food safety standpoint. From the very outset of the Nebraska plant's operations in 2019, the facility has repeatedly and significantly failed federal Salmonella performance standards.[23]

33.    The USDA's Food Safety and Inspection Service (FSIS) regularly tests poultry processing plants for Salmonella and assigns ratings based on what percentage of samples are contaminated. Plants that meet the standard are in Category 1 or 2, while Category 3 is reserved for the worst performers that exceed the allowable contamination threshold.

34.    The applicable performance standard is not zero. Under USDA guidance, a poultry processing facility may be within the performance standard if up to 9.8% of sampled whole chicken carcasses test positive for Salmonella; for certain chicken parts, the allowable positivity rate is higher, reaching up to 15.4%, depending on the product type and sampling category.[24]

35.    Despite these permissive thresholds, Costco's Nebraska facility has repeatedly failed to remain within the applicable limits. Based on an analysis of USDA inspection data conducted by Farm Forward, Costco's Lincoln Premium Poultry plant was classified as Category 3—meaning it exceeded the allowable Salmonella threshold—in approximately 92% of reporting months since the facility began operations in 2019.[25]

---

[23] *Id.*

[24] U.S. Department of Agriculture, Food Safety and Inspection Service, *FSIS Directive 10250.2*, https://www.fsis.usda.gov/policy/fsis-directives/10250.2.

[25] *Id.*; https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/; https://www.farmforward.com/wp-content/uploads/2025/12/Farm-Forward-Contaminated-Costco-12.3.2025.pdf.

CLASS ACTION COMPLAINT- 14

36.     Stated differently, in the vast majority of testing cycles, more than the permitted percentage of Costco's whole chickens and chicken parts tested positive for Salmonella. From September 2023 through July 2025, the facility exceeded the applicable Salmonella performance standard in every monthly testing period.[26]  Because FSIS does not distinguish among degrees of noncompliance beyond Category 3, the precise contamination rates during those periods are not available to Plaintiff—only that they consistently exceeded the regulatory threshold.

37.     However, a closer look at FSIS's Salmonella Verification Testing Monthly Postings reveals the severity of the plant's situation since it opened in September 2019.[27] **Specifically, from March 3, 2019 through May 31, 2025, the Lincoln Poultry Plant's Young Chicken Carcasses were rated in Category 3 in a total of 56 out of 65 reports, and its Chicken Parts were rated in Category 3 in a total of 18 out of 65 reports.**[28]

38.     Being rated Category 3 is not just a bureaucratic black mark; it directly correlates to unsafe products reaching consumers. Government data and Costco's own records indicate that roughly 1 out of every 10 whole chickens coming out of the Fremont plant (which become the rotisserie products) was contaminated with Salmonella. Likewise, an estimated 1 out of every 6 packages of Costco's raw chicken parts from that plant carried Salmonella. These contaminated birds were shipped to Costco warehouses nationwide to be sold to unsuspecting customers.

---

[26] https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/#:~:text=The%20Fremont%2C%20Nebraska%20plant%20accounts,com's%20poultry%20companies%20database.

[27] https://www.fsis.usda.gov/science-data/data-sets-visualizations/microbiology/salmonella-verification-testing-program-monthly; https://www.wattagnet.com/broilers-turkeys/processing-slaughter/article/15528221/lincoln-premium-poultry-plant-set-to-open-in-september-wattagnet.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

39.    Additionally, the USDA's Food Safety and Inspection Service (FSIS) Office of Investigation, Enforcement and Audit (OIEA) conducts investigation of poultry, meat and egg product facilities and acts as an enforcement arm of FSIS criminal, civil and administrative sanctions and authorities.[29] It propounds Quarterly Enforcement Reports that provide a summary of the enforcement actions FSIS has taken to ensure that meat, poultry, and egg products reaching consumers are safe, wholesome, and properly labeled.[30] The OIEA most recently issued a Notice of Warning to the Lincoln Premium Poultry Plant on April 22, 2025.[31]

40.    In practical terms, the documented contamination rates translate into a materially increased likelihood that consumers purchasing Costco chicken products would bring Salmonella-contaminated poultry into their homes and consume it. Based on the facility's testing results, a customer purchasing a chicken faced a meaningful risk that the bird tested positive for Salmonella prior to cooking. Although proper cooking is intended to eliminate the pathogen, the presence of Salmonella on incoming carcasses substantially increases the risk of cross-contamination during handling and preparation, as well as the risk associated with inadequate or inconsistent cooking—which is precisely why consumers have an interest in purchasing chicken with a lower risk of Salmonella contamination.

41.    With respect to raw chicken products, consumers are required to rely on careful handling and thorough cooking to mitigate contamination risks—an expectation that becomes materially more burdensome when contamination rates are persistently elevated. Here, the undisclosed conditions under which Costco's chicken was produced and processed

---

[28] *Id.*

[29] https://bit.ly/4trGr5y.

[30] https://bit.ly/4tpUc4R

[31] https://www.fsis.usda.gov/sites/default/files/media_file/documents/qer-q3-fy2025-tables.pdf

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

substantially increased the likelihood that consumers would encounter Salmonella-contaminated products at the point of sale, thereby exposing them to an increased risk of foodborne illness not just from the chicken itself, but from cross contamination of other food and surfaces that come into contact with the tainted chicken.

42.    This reality is inconsistent with the quality-control assurances implicit in Costco's decision to vertically integrate its poultry operations and market those products as a reliable, high-quality staple. Rather than demonstrating enhanced oversight and safety, Costco's Nebraska poultry operation has emerged as a statistical outlier within the industry based on its sustained Salmonella performance results.

## IV.    Costco is on Constant Notice of its Own Failings, But Has Not Taken Remedial Action

43.    Costco is well aware of these problems. The USDA inspection results are published and updated frequently, and Costco receives inspection reports and notices from FSIS when its plant is in Category 3. Shortly after opening in 2020, Costco knew its new plant was struggling with Salmonella contamination (with internal data showing high positives), yet it did not disclose this to consumers or cease distribution.[32]

44.    By 2021, the facility continued to be classified predominantly as Category 3, yet Costco did not implement effective corrective measures to address the issue.[33] This pattern persisted in subsequent years, during which Costco's senior management was aware that its flagship $4.99 rotisserie chicken was being sourced from a facility that repeatedly exceeded applicable Salmonella performance thresholds.

---

[32] *See* https://www.fsis.usda.gov/science-data/data-sets-visualizations/microbiology/salmonella-verification-testing-program-monthly.

[33] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

45.    Additionally, in November 2025, The Street reported that an undercover investigation showed Costco's supplier chickens were kept in overcrowded, unsanitary conditions with many birds suffering injuries—conditions ripe for disease.[34]

46.    In 2025, the advocacy nonprofit Farm Forward published a detailed report on Costco's Salmonella rates, garnering national attention and further alerting Costco that the public was watching.[35] Similarly, Consumer Reports in mid-2025 identified Costco's plant as among the worst in the country.[36]

47.    Even after these issues became publicly documented, Costco did not notify consumers who had purchased its chicken products and did not alter its sales practices. Costco has issued no warning to its members regarding the contamination concerns. As a result, despite its knowledge of the sustained Salmonella performance issues, Costco continued to sell and market its chicken products without disclosure or remedial action consistent with reasonable consumer expectations.

## V.    Conditions at Costco's Nebraska Facility and Throughout the Chain of Production Create a Cycle of Contamination

48.    The extraordinary level of Salmonella in Costco's chickens is not merely bad luck. Instead, it is a direct consequence of how Costco and its contractors breed and raise the birds. As noted in the Farm Forward Report:

> Salmonella contamination doesn't emerge out of nowhere. The conditions under which animals are raised contribute directly to the virulent spread of the disease, including overcrowding, poor ventilation, unsanitary conditions, and the genetic

---

[34] The Street, *Costco's beloved $4.99 rotisserie chicken could harbor a nasty secret* (Nov. 9, 2025), https://www.thestreet.com/retail/costcos-beloved-4-99-rotisserie-chicken-could-harbor-a-nasty-secret.

[35] https://www.farmforward.com/publications/inside-costcos-chicken-supply-chain-salmonella-contamination-and-the-true-costs-of-the-4-99-rotisserie-chicken/

[36] https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/

CLASS ACTION COMPLAINT- 18

uniformity of birds bred to grow so fast that they often collapse under their own weight and suffer compromised immune systems, making them more susceptible to disease. Stress during transport and slaughter further increases contamination risks. It is now understood that the risk of foodborne illness is heightened by poor animal welfare.[37]

49.     These conditions are found in Costco's affiliate's facilities. To maximize efficiency, Costco's chickens are bred for rapid growth and raised in large, high-density flocks, circumstances that heighten stress and susceptibility to disease and facilitate the spread of pathogens within a flock. Once introduced, Salmonella can propagate quickly through shared living environments and handling.

50.     Costco's vertical integration did not mitigate these conditions and instead made them worse. Large flock sizes, accelerated production cycles, and reliance on automated systems allowed contamination present at the farm level to carry through the supply chain. During transport to the processing facility, birds were subjected to additional stress associated with crowding and handling, further contributing to the presence of pathogens when flocks entered the slaughter process.[38]

51.     The journey from farm to processing plant provides further opportunity for contamination. Birds are wrangled and loaded into transport crates. USDA reports from Costco's LPP operation show that transport conditions have been deplorable at times, leading to massive die-offs that reflect severe stress and crowding. In recent years, thousands of Costco's chickens died in transit due to extreme conditions—e.g., 2,000 birds freezing to death in unheated trucks, 1,600 suffocating from overcrowding and lack of water, and even 1,000

---

[37] https://www.farmforward.com/publications/inside-costcos-chicken-supply-chain-salmonella-contamination-and-the-true-costs-of-the-4-99-rotisserie-chicken/

[38] https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/

CLASS ACTION COMPLAINT- 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

perishing in a trailer fire while awaiting unloading.[39] These grisly incidents, documented by USDA inspectors, illustrate the extent to which Costco's system subjects animals to trauma and illness before they even reach the slaughter line.

52.     When the chickens finally arrive at the processing plant, they are slaughtered and eviscerated at industrial line speeds. Where incoming flocks carry Salmonella, routine processing steps—including cutting, evisceration, and communal chilling—can spread contamination across multiple carcasses if controls are inadequate.

53.     The facility's persistent Category 3 classification over an extended period is consistent with chronic deficiencies in preventing cross-contamination during processing. Failures at any stage of the slaughter process, including sanitation, temperature control, or equipment capacity, can permit Salmonella present in a portion of the flock to contaminate a substantially larger volume of product.

54.     Conditions earlier in the production chain also bear on these outcomes. Analyses of USDA data show that periods of elevated Salmonella results at the facility coincided with citations for humane-handling deficiencies, reflecting production and handling practices that increase stress and illness in birds and are associated with higher contamination levels.[40]

55.     A 2021 undercover investigation conducted by Mercy For Animals documented conditions at contract farms that revealed "dim barns thick with ammonia, birds too large to stand, open sores, and animals unable to reach food or water." Costco's response was telling: it dismissed the disturbing footage as "normal and uneventful activity."[41] In other words, Costco

---

[39] https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/

[40] https://sentientmedia.org/costco-chicken-plant-keeps-failing-tests-for-salmonella/

[41] https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/

CLASS ACTION COMPLAINT- 20

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

admitted that such conditions were business-as-usual in its low-cost poultry production model—**the same model that yields rampant Salmonella contamination.**

56.     As a result of these integrated production and processing practices, Costco's poultry operation produced chicken products with persistently elevated Salmonella contamination that entered the consumer marketplace.

**VI.     Costco Remains Silent and Chooses Inaction and Indifference to Consumer Safety**

57.     Despite growing public outcry—including a shareholder lawsuit filed in 2021 accusing Costco's directors of breaching fiduciary duties by tolerating illegal animal cruelty in its poultry supply chain[42]—Costco has shown no indication of changing its approach. Approximately 7.2 million chickens under Costco's care die before even reaching slaughter each year (a staggeringly high mortality figure indicative of poor health conditions).[43] Yet Costco presses on with its high-volume, low-cost production model, seemingly viewing these losses (both in bird lives and in food safety quality) as acceptable collateral for cheap chicken.

58.     Costco has not implemented any customer notification or enhanced testing program, even as data shows its contamination issue is persistent. In short, Costco has put its head in the sand—continuing to sell its "cheap Costco chicken" while hoping consumers remain ignorant of the unreasonable risks that come with it.

59.     Despite some coverage of Costco's practices in industry circles and publications, the consuming public has remained essentially unaware of the abysmal safety rating of one of the country's largest producers of poultry. Instead, consumers have relied upon Costco's representations in believing the chickens were safe.  Had they known the true facts

---

[42] https://www.farmforward.com/news/the-truth-behind-costcos-famous-4-99-rotisserie-chicken/

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

regarding the risks associated with Costco's poultry, they would not have purchased them, would have paid less for them, or would have otherwise altered their behavior.

60.     In light of Costco's superior access to information regarding the contaminated nature of its chicken and failure to disclose the heightened risk of the same to consumers, purchasers of chicken were unaware until recently of the problems with the poultry and the existence of a claim regarding the same.  Thus, the statute of limitations has been tolled by virtue of Defendant's fraudulent concealment of the true nature of its chicken products.

## PLAINTIFF'S SITUATION IS DEMONSTRATIVE

61.     On numerous occasions during the relevant period, Plaintiff bought Costco's $4.99 rotisserie chicken from Costco warehouse stores in the St. Louis, Missouri metropolitan area. Plaintiff estimates that she made a trip to Costco at least monthly and would pick up one or two rotisserie chickens as a matter of routine on most visits. She would also occasionally order the rotisserie chickens from Costco via Instacart. Plaintiff made these purchases for personal and family consumption.

62.     In selecting Costco's chicken products, Plaintiff saw and relied on Costco's in-store marketing and the product labeling, which led her to believe the chickens were safe, healthy, and produced under high standards of quality control.

63.     For example, Costco's rotisserie chickens are sold ready-to-eat and labeled with USDA quality marks, which to Plaintiff signified that the product was appropriate for human consumption and complied with food safety laws.

64.     Costco's signage and reputation further reinforced that its $4.99 chickens were a valued, family-friendly product—nothing indicated any extraordinary safety risk. Plaintiff had

---

[43] *Id.*

CLASS ACTION COMPLAINT- 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

no knowledge of the Salmonella contamination problems in Costco's chicken supply chain and enhanced risk resulting therefrom, and Costco did not disclose this information at the point of sale or otherwise.

65.    Had Plaintiff known that Costco's chicken products were sourced from a facility with persistently elevated (and failing) Salmonella contamination rates, she would not have purchased them, or would have paid significantly less for them.

66.    Plaintiff suffered economic injury at the time of purchase by paying for chicken products that were worth less than represented due to undisclosed contamination risks. Plaintiff continues to shop at Costco and wishes to purchase safe and affordable food products in the future, but absent corrective action and disclosure by Costco, she cannot rely on Costco's representations regarding the safety of its chicken products and faces a continued risk of future harm.

## CLASS ACTION ALLEGATIONS

67.    Class Definition. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a proposed Class defined as follows:

> All persons in the United States (including its territories) who purchased, for personal or household use, any Kirkland Signature branded rotisserie chicken or raw chicken product sold by Costco (including but not limited to) a, during the period from January 1, 2019 to the present (the "Class Period").

68.    Excluded from the Class are: (a) any persons who file timely requests to opt out of this Class; (b) the Defendant, its officers, directors, and employees; (c) any legal representatives, heirs, or assigns of Defendant; and (d) the judge(s) to whom this case is assigned and any immediate family members thereof.

69.    In the alternative, and/or in addition, Plaintiff may seek to certify one or more subclasses for residents of particular states or for purchasers of particular types of products, to

CLASS ACTION COMPLAINT- 23

the extent it is found that common issues predominate only within those groupings. Plaintiff reserves the right to refine the Class definition and/or add subclasses based on information obtained through investigation and discovery.

70.    **Numerosity** (Rule 23(a)(1)). The Class is so numerous that joinder of all members is impracticable. Although the precise number of class members is currently unknown to Plaintiff, public information and Costco's own data indicate that millions of Costco members have purchased rotisserie or raw chickens supplied by the Nebraska plant during the Class Period. Costco sold over 150 million chickens just in 2025 alone. Even assuming only a fraction of those were from the LPP plant, and considering raw chicken sales, the Class easily encompasses many hundreds of thousands of consumers (if not millions) across the country. Class members are geographically dispersed in dozens of states, as Costco operates warehouses nationwide. The numerosity requirement is thus clearly satisfied.

71.    **Commonality and Predominance** (Rule 23(a)(2) & 23(b)(3)). There are numerous questions of law and fact common to the Class, and those questions predominate over any individual issues. The claims arise from a common course of conduct by Defendant—namely, Costco's deceptive marketing, production, and sale of chicken products that were unsafe and presented unreasonable risks to the consuming public. Common questions include, but are not limited to:

a.    Whether Costco's conduct in selling chicken products with undisclosed high Salmonella contamination risks constitutes an "unfair or deceptive act or practice" under the Washington Consumer Protection Act, RCW 19.86.020

b.    Whether Costco had a duty to disclose the Salmonella contamination issues to consumers and knowingly failed to disclose those material facts.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

c.   Whether Costco's marketing, labeling, or omissions about its chicken products were likely to mislead a reasonable consumer about the safety and quality of the products.

d.   Whether the chicken products at issue were unfit for the ordinary purpose of consumption due to the unreasonable risk of contamination and/or actual contamination, thereby breaching the implied warranty of merchantability.

e.   Whether Costco's conduct injured consumers by causing them to pay money for products they otherwise would not have purchased, or to pay more than they would have in the absence of the misrepresentations and omissions.

f.   Whether Costco was unjustly enriched as a result of its conduct, at the expense of the class members.

g.   Whether the foregoing practices by Costco violated consumer protection statutes of Washington (and/or other states, to the extent applicable).

h.   Whether Class members are entitled to damages, restitution, injunctive relief, and/or other relief as a result of Costco's acts.

72.   These common questions have answers that will drive resolution of the litigation for all Class members. Evidence regarding Costco's plant performance, its knowledge, and its representations, is common to all and will not vary from person to person. Thus, common issues predominate over any hypothetical individual issues of reliance or damages calculation.

73.   **Typicality** (Rule 23(a)(3)). Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff, like all Class members, purchased Costco chicken products that were produced by the same methods, subject to the same contamination issues, and marketed in the same manner (without disclosure). The injuries alleged by Plaintiff,

CLASS ACTION COMPLAINT- 25

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

including but not limited to economic losses and exposure to safety risks, arise from the same course of conduct by Costco that affected all class members.

74.     **Adequacy** (Rule 23(a)(4)). Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that conflict with or are antagonistic to the interests of other Class members. Plaintiff understands the fiduciary duties of a class representative and is willing and able to carry them out. Additionally, Plaintiff is represented by undersigned counsel who are experienced in class action litigation, including consumer protection and product safety cases. Plaintiff's attorneys have the resources, expertise, and experience to prosecute this action vigorously and to devote sufficient attention to the case. Neither Plaintiff nor her counsel have any conflicts of interest with the Class.

75.     **Superiority** (Rule 23(b)(3)). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member (e.g. the cost of a chicken or a few chickens) is relatively small, on the order of a few dollars to a few hundred dollars. Thus, the expense and burden of individual litigation would make it impracticable for most class members to seek redress on their own. Even if those consumers were aware of their rights (which many are not, given the concealed nature of the problem), the cost of hiring an attorney to pursue a single claim would far exceed the potential individual recovery. Aggregating the claims in a class action allows for the efficient use of judicial and party resources and avoids inconsistent outcomes.

76.     Class treatment is also appropriate because Costco's conduct was uniform across the Class—the case presents a paradigm of a company-wide policy affecting numerous people in the same way, which can be best resolved in one proceeding. There are no significant manageability difficulties anticipated in maintaining this case as a class action. Any potential

CLASS ACTION COMPLAINT- 26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

individual issues (such as differences in how many chickens each person bought) are easily

managed and do not predominate over the common issues. Moreover, if Class members were to

bring individual suits, it would pose a risk of conflicting adjudications and incompatible

standards of conduct for Costco. Class litigation is the superior method to resolve this

controversy fairly and efficiently.

77.    **Injunctive Relief** (Rule 23(b)(2)).  In addition to certification under Rule

23(b)(3), Plaintiff also seeks certification under Rule 23(b)(2) for purposes of injunctive and

declaratory relief. Costco has acted or refused to act on grounds that apply generally to the

Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

Specifically, Costco's continued sale of chicken products without disclosing or addressing the

contamination issue is a practice applicable to all class members; an injunction prohibiting such

conduct (or requiring corrective action) would benefit everyone in the Class collectively.

Likewise, a declaration that Costco's conduct violates the law would apply class-wide. Given

that some aspects of relief sought are injunctive in nature, Rule 23(b)(2) certification is proper

(either for a unified class or an injunctive subclass) to ensure Costco is required to ensure that

all Class members are treated equitably.

**CLAIMS FOR RELIEF**
**COUNT I – Violation of Washington Consumer Protection Act**
**(RCW 19.86.020 et seq.)**

78.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

79.    Plaintiff is a natural person, and Defendant Costco is a corporation; each is a

"person" within the meaning of RCW 19.86.010(1).

80.    Costco's actions and omissions as described herein constitute "unfair or

CLASS ACTION COMPLAINT- 27

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    deceptive" practices in violation of the Washington Consumer Protection Act (CPA), RCW

2    19.86.020. Costco's conduct had the tendency and capacity to mislead a substantial portion of

3    the public regarding a material fact—namely, the safety and quality of its chicken products.

4    Through affirmative representations and the omission of material facts, Costco conveyed that

5    its chickens were safe and wholesome and produced under high standards of quality control,

6    while knowing or having reason to know that a statistically significant percentage of those

7    products were affected by persistently elevated Salmonella contamination.

8

9        81.    A reasonable consumer would have been deceived by Costco's omissions and

10   false assurances, and Plaintiff and class members were in fact so deceived.

11       82.    Costco engaged in trade or commerce within the meaning of the CPA by

12   marketing, advertising, and selling rotisserie and raw chicken products to retail consumers for

13   household use. RCW 19.86.010(2). The acts and omissions challenged in this action arose

14   directly from Costco's commercial activities as a seller of consumer food products and

15   occurred in the course of promoting and selling merchandise to the public.

16

17       83.    Costco's unfair and deceptive practices affect the public interest within the

18   meaning of RCW 19.86.093(3) because the conduct complained of had the "capacity to injure

19   other persons" beyond the named Plaintiff. Costco's marketing and sale of its chicken products

20   were directed to the general consuming public and occurred in the ordinary course of its

21   business, rendering the challenged practices capable of repetition. These circumstances satisfy

22   the public interest requirement of the CPA.

23

24       84.    Costco acted with knowledge of facts material to consumers' purchasing

25   decisions and failed to disclose those facts in the marketing and sale of its chicken products.

26   Costco was aware of persistent Salmonella performance issues at its poultry processing facility

CLASS ACTION COMPLAINT- 28

1    yet continued to promote and sell its chicken products without modification or disclosure.

2    Regardless of Costco's state of mind, its conduct constituted an unfair or deceptive practice

3    because it was likely to mislead reasonable consumers regarding the safety and quality of the

4    products.

5        85.    Costco's conduct departed from food-safety standards established under state

6    and federal law that are intended to protect consumers, further underscoring the materiality of

7    the undisclosed contamination risks.[44] Plaintiff does not seek to enforce those regulatory

8    schemes directly, but alleges that Costco's failure to disclose information bearing on product

9    safety constitutes an unfair or deceptive practice actionable under the CPA.

10       86.    As a direct and proximate result of Costco's unfair and deceptive acts, Plaintiff

11   and the Class have sustained damages. Plaintiff and Class members suffered economic injury at

12   the point of sale, because they paid money for chickens that were represented to be safe and of

13   high quality when in fact the products delivered were worth significantly less (or had

14   significantly diminished value) due to undisclosed contamination risks and safety defects. Had

15   they been aware of the true conditions under which Costco's chicken products were produced,

16   Plaintiff and Class members would not have purchased the products or would have paid less for

17   them.

18       87.    Pursuant to RCW 19.86.090, Plaintiff and Class members are entitled to recover

19   actual damages, which may include the full retail purchase price of the chicken products or at

20   least the difference in value between the product as represented and as received, plus court

21   costs and reasonable attorneys' fees.

22       88.    Furthermore, treble damages are authorized under the CPA. Accordingly,

---

[44] *See, e.g.*, 21 U.S.C. § 342; RCW 15.130.200; RCW 15.130.410; Mo. Rev. Stat. § 196.015.

CLASS ACTION COMPLAINT- 29

Plaintiff, on behalf of the Class, seeks an award of treble damages up to $25,000 per class member as permitted by law, due to the willful and egregious nature of Costco's conduct.

89.    Plaintiff also seeks injunctive relief under RCW 19.86.090 to enjoin Costco from continuing the unfair or deceptive acts and to require corrective measures. Specifically, Plaintiff requests an order prohibiting Costco from selling or marketing its chicken products in the misleading manner described, and/or requiring Costco to adequately test and remediate Salmonella contamination and to disclose such contamination risks to consumers. Such injunctive relief is necessary to prevent further injury to the public. Plaintiff additionally seeks any other relief the Court deems appropriate under the CPA, including restitution where applicable (although overlapping, as addressed in other counts).

**Count II – Unjust Enrichment**

90.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.    Plaintiff and the Class conferred a monetary benefit upon Defendant Costco in the form of the money they paid to buy Costco's rotisserie and raw chicken products. Specifically, Plaintiff and Class members each paid the purchase price (e.g., $4.99 for a rotisserie chicken, or varying prices per pound for raw chicken) to Costco, and Costco accepted and retained those payments.  To the extent that, as described herein, Defendant offers its rotisserie chickens below cost to spark demand for its memberships and encourage members to shop at its stores, Defendant also benefitted from Plaintiff and the Class's patronage generally and their membership dues.

92.    Under the circumstances, it would be unjust and inequitable for Costco to retain the benefits provided by Plaintiff and Class members. Costco induced these purchases through

CLASS ACTION COMPLAINT- 30

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

misleading representations and omissions regarding the safety and quality of the products. Costco knowingly sold a defective and unsafe product—chicken laden with excessive Salmonella—yet failed to disclose this and continued to market the product as if it were wholesome. Had Plaintiff and Class members known the truth, they would not have bought Costco's chicken or would have paid far less. Thus, Costco was enriched by revenues that it would not have obtained in a fair marketplace.

93. Additionally, by saving money through lax safety practices (and using the chickens to draw in customers), Costco increased its profits at consumers' expense. Costco's retention of the full purchase price and other benefits violates fundamental principles of justice, equity, and good conscience.

94. There is a direct relationship between Plaintiff's loss and Costco's gain: every dollar class members spent on the chicken went into Costco's coffers. This enrichment was "unjust" because Costco's conduct—selling unsafe products and misrepresenting them—is morally blameworthy and against public policy.

95. Costco has failed to provide refunds or make any compensation to purchasers for the issues at hand, thus continuing to hold the benefits.

96. In the alternative to the legal claims pleaded and in the event they are unsuccessful, Plaintiff and Class lack an adequate remedy at law to restore the benefit they conferred.

97. Under the doctrine of unjust enrichment, Plaintiff and the Class seek restitution from Costco, in an amount equal to the monies paid to purchase the chicken products, or disgorgement of the profits that Costco unjustly obtained from those transactions. This includes interest and any other appropriate relief. If full monetary refunds are not feasible, the Court

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    should impose a constructive trust or other equitable mechanism to ensure funds are returned or

2    used for the benefit of the Class.

3    ### Count III – Breach of Implied Warranty of Merchantability
     ### (RCW 62A.2-314 and Uniform Commercial Code)
4

5    98.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

6    though fully set forth herein.

7    99.    Costco is a merchant with respect to goods of the kind at issue (chicken meat

8    products), and in fact is a major retail seller of food products. Under the Uniform Commercial

9    Code as adopted in Washington (RCW 62A.2-314) and similar laws in other states, an implied

10   warranty of merchantability was in effect for the chicken products that Costco sold to Plaintiff

11   and Class members.

12

13   100.    This implied warranty means that the seller promises, among other things, that

14   the goods are of fair average quality and fit for the ordinary purposes for which such goods are

15   used.

16   101.    Costco did not issue any valid disclaimer of warranty to retail consumers for its

17   chicken products.

18

19   102.    For a food product to be merchantable and fit for consumption, it must be safe

20   and wholesome—i.e., not contain contaminants that would make it unsafe to consume if

21   handled normally. While certain raw foods (like raw chicken) might inherently carry some

22   bacteria, they are expected to be within reasonable and regulatory levels such that a consumer

23   can safely cook and consume them using ordinary methods. Ready-to-eat foods (like a cooked

24   rotisserie chicken) especially should be free from harmful pathogens at the point of sale. At

25   minimum, a product that violates federal food safety standards or is sold in a state that does not

26   adequately account for the unreasonable risk of contamination fails the ordinary expectations of

CLASS ACTION COMPLAINT- 32

the consumer and thus is not of fair average quality.

103.    Costco breached the implied warranty of merchantability with respect to the chicken products purchased by Plaintiff and the Class. At the time of sale, the products were not of merchantable quality nor fit for the ordinary purpose of human consumption, due to the excessive Salmonella contamination risk and/or actual contamination. The chickens were defective and unfit because they carried an unreasonable risk of dangerous levels of pathogenic bacteria, far above what a reasonable consumer would expect in store-bought poultry. They failed to meet the federal performance standards for Salmonella, which is a further indication that they were unreasonably dangerous for their ordinary use (food consumption) without extraordinary precautions.

104.    A reasonable consumer would not knowingly purchase chicken that has a high likelihood of causing foodborne illness, and such a product is not fit for ordinary household meal preparation. Moreover, the rotisserie chickens (intended to be eaten immediately) absolutely should not contain viable pathogens—to the extent the birds were contaminated entering the store, any surviving bacteria post-cooking means the ready-to-eat product was adulterated and unsafe.

105.    The raw chickens, while expected to be cooked by the consumer, still breached the warranty because the contamination level was so high that normal handling could easily result in illness (for example, through cross-contamination or slight undercooking). Indeed, many Class members likely would not have purchased the raw chicken had they known it exceeded safety limits, because it essentially required them to assume the extraordinary risk and labor of decontaminating a product that should have been reasonably safe to begin with.

106.    The unreasonable risk of Salmonella contamination in Costco's chicken

CLASS ACTION COMPLAINT- 33

products was present at the time of sale to Plaintiff and Class members. The defect was not introduced by consumers; rather, it originated from Costco's production, processing, and distribution chain. Costco delivered a product that was already contaminated (or highly likely to be contaminated) when it left Costco's control. The products did not substantially change from the time of leaving Costco's possession to consumption—any contamination issues were inherent. Therefore, the breach of warranty is attributable to Costco's actions (or inactions) prior to sale.

107.    Plaintiff and Class members have given or are not required to give formal notice of breach to Costco in these circumstances. Costco was constructively aware of the nonconforming nature of its chickens through its own testing and the public USDA data; thus, Costco cannot claim surprise. Nonetheless, to the extent any notice requirement applies, Costco has been made aware of its breach by the filing of this Complaint and by the pre-suit communications and media reports concerning the issue.

108.    Additionally, because Costco's misconduct was actively concealed and only became publicly known through investigations, any requirement of earlier notice should be deemed satisfied by those public reports and/or should be excused as futile.

109.    Plaintiff (and many class members) purchased the products directly from Costco, either in Costco stores or via Costco's website/approved delivery services. Thus, they are in privity of contract with Costco for purposes of warranty.

110.    As a direct and proximate result of Costco's breach of the implied warranty of merchantability, Plaintiff and Class members suffered damages. They did not receive the value of the goods as warranted. The chickens they bought were worth substantially less than the price paid because a chicken with an unreasonable risk of contamination is not equal in value to

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

a safe, merchantable chicken.  Therefore, Class members have been damaged by at least the amount of the purchase price of the non-merchantable chickens.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Taylor, on behalf of herself and the Class, prays that the Court enter judgment against Defendant Costco Wholesale Corporation and grant the following relief:

A. Enter an Order certifying this case as a class action pursuant to Rule 23, appointing Plaintiff as class representative and Plaintiff's counsel as class counsel, approving notice to the Class, and requiring Defendant to bear the costs of class notice.

B. Issue a permanent injunction prohibiting Costco from engaging in the unlawful acts described herein. In particular, an injunction (1) barring Costco from selling chicken products from plants that do not meet federal safety standards or that are contaminated beyond an acceptable level, unless and until full disclosure of the risk of contamination is made to consumers and appropriate measures are taken to reduce the risk; (2) requiring Costco to implement remedial measures in its poultry supply chain to substantially reduce Salmonella contamination (such as improved sanitation, slower line speeds, better farm conditions, regular testing and public reporting of contamination rates, etc.); and (3) requiring Costco to provide corrective notices or warnings to past and future purchasers about the Salmonella issues until the Court is satisfied that the problem is resolved. The injunctive relief should be designed to protect consumers from ongoing harm and ensure compliance with consumer protection laws.

CLASS ACTION COMPLAINT- 35

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

C. Enter an award of compensatory damages in favor of Plaintiff and Class members for the losses they sustained, in an amount to be proven at trial. This includes, at a minimum, the refund or return of the purchase price of the chicken products bought by the Class, or the difference in market value between the product as advertised (safe chicken) and as delivered. Plaintiff will seek the maximum recovery allowed by law for each Class member.

D. Enter an award of treble damages as authorized by the Washington Consumer Protection Act, RCW 19.86.090, for Costco's willful and flagrant violations. Plaintiff asks for an award of actual damages up to three times the actual amount sustained, not to exceed $25,000 per class member, as permitted by RCW 19.86.090, given the egregious nature of Defendant's conduct and the need for deterrence.

E. Award restitution or disgorgement requiring Costco to return all unjust gains to Plaintiff and the Class. This may overlap with damages, but to the extent any purchase money or profits derived from the wrongful conduct have not been accounted for in damages, Costco should be compelled to disgorge them.

F. Enter an award of reasonable attorneys' fees and costs of suit.

G. Award pre-judgment interest and post-judgment interest to the extent permitted by law.

H. Award such other and further relief as the Court deems just and proper. This includes any declaratory relief the Court finds appropriate (e.g., a declaration that Defendant's conduct was unlawful) and any supplemental relief that may be necessary to effectuate the judgment or to protect Class members' interests.

CLASS ACTION COMPLAINT- 36

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**JURY DEMAND**

2          Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury on all claims

3    and issues in this action that are so triable.

4

5          DATED this 12th day of February, 2026.

6

7                              **TOUSLEY BRAIN STEPHENS PLLC**

8

9          By: */s/ Kaleigh N. Boyd*
                              Kaleigh N. Boyd, WSBA No. 52684
10                             1200 Fifth Avenue, Suite 1700
                              Seattle, WA 98101
11                             Tel.: 206.682.5600
                              Fax: 206.682.2992
12                             kboyd@tousley.com

13
                              Steven A. Schwartz*
14                             Beena M. McDonald*
                              Dylan D. Altland*
15                             **CHIMICLES SCHWARTZ KRINER**
                              **& DONALDSON-SMITH LLP**
16                             One Haverford Centre
17                             361 Lancaster Avenue
                              Haverford, PA 19041
18                             Tel.: 610.642.8500
                              sas@chimicles.com
19                             bmm@chimicles.com
                              dda@chimicles.com
20
21                             James J. Rosemergy*
                              **CAREY, DANIS & LOWE**
22                             8235 Forsyth, Suite 1100
                              St. Louis, MO 63105
23                             Tel.: 314.725.7700
                              Fax: 314.721.0905
24                             jrosemergy@careydanis.com
25
                              *\* to be admitted Pro Hac Vice*
26
                              ***Attorneys for Plaintiff and the Class***

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

CLASS ACTION COMPLAINT- 37